**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **RICKEY FANTROY,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:12-CV-0082-N (BH) |
| § | |
| **FIRST FINANCIAL BANK, N.A., et al.,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management. Before the Court for recommendation are *Ameriquest and Argent's Motion to Dismiss or Alternatively Motion for Summary Judgment*, filed March 26, 2012 (doc. 30) and *Deutsche Bank's Motion to Dismiss or Alternatively Motion for Summary Judgment*, filed April 13, 2012 (doc. 50). Based on the relevant filings and applicable law, the motions should be **GRANTED in part** and **DENIED in part as moot**.

**I. BACKGROUND**

This is an action involving foreclosure of real property located at 405 N. Trinity, Cleburne, Texas 76031(the Property). (*See* doc. 81 at 7–8.) Plaintiff Rickey Fantroy (Plaintiff) alleges that on April 9, 2004, he obtained a loan from Argent Mortgage Company (Argent) to refinance the Property, his homestead. (*Id.* at 4.) When he signed for the loan, he was "under duress and coercion" because of his mother's death "and other problems." (*Id.*) Although he "only signed a refinance for $59,000," an additional $40,000 was disbursed, bringing the loan total to $109,894.20. (*Id.* at 5.) The HUD settlement statement attached to his complaint shows that a transaction for $109,894.20 was processed by Fidelity National Agency, Inc. on April 8, 2004. (*See* doc. 81-1 at

3.) It shows that $59,000 was credited to Litton Loan Servicing LP, $40,000 was credited to Wood Forest Bank, and $1,694.20 constituted closing costs. (*See id.* at 2–4.) To secure the loan, he signed a "Texas Home Equity Security Instrument" for $108,000, granting Argent a first lien on the Property. (*Id.* at 8.)

**A.     Prior State Court Litigation**

Plaintiff apparently defaulted, and on May 24, 2006, Deutsche Bank National Trust Company (Deutsche Bank) obtained an "order to proceed with notice of foreclosure and foreclosure sale" from the 18th judicial district court of Johnson County. (*Id.*) On November 7, 2006, the substitute trustee sold the Property to Deutsche Bank, as trustee, at a foreclosure sale for $99,000. (*Id.* at 8–9.) On May 15, 2007, the Johnson County Court at Law No. 2 affirmed a justice of the peace judgment in favor of Ameriquest Mortgage Company (Ameriquest) in a forcible detainer suit against Plaintiff. (doc. 52-6 at 2.) Plaintiff appealed, but his appeal was dismissed on June 4, 2008. (*See* doc. 52-7 at 2.) On October 15, 2008, the Johnson County Court at Law granted Ameriquest's petition for a writ of possession. (doc. 81-1 at 6.)

On November 25, 2008, Plaintiff sued Fidelity National Title Insurance Company (Fidelity), Ameriquest, Argent, and Deutsche Bank in the 413th judicial district court of Johnson County in Cause No. C200700290. (*See* doc. 52-1.) His petition asserted claims for fraud and wrongful foreclosure. (*See id.*) It stated that he "signed for a refinance of $59,000" but an unauthorized $40,000 was also disbursed. (*Id.* at 2.) At the time of signing, he was "under duress and coercion" because of his mother's death "and other problems." (*Id.*) He "contacted Fidelity ... numerous times trying to resolve [the] matter." (*Id.*) A "defendant" recorded a fraudulent security instrument with Johnson County's office of public records. (*Id.* at 3.) The security instrument and the

2

subsequent lien were fraudulent because he did "not sign for work, material, or received monies" as required by the Texas Constitution. (*Id.*) He requested an "emergency ex parte injunction to set aside [the] wrongful foreclosure and sale of [the] Property." (*Id.*)

On December 2, 2008, the state district court granted Ameriquest, Argent, and Deutsche Bank a "no evidence summary judgment" on both claims. (*See* doc. 52-3 at 2.) To make the judgment "final for all purposes," they filed a motion to sever the suit against them from Fidelity, which the court granted. (*See* doc. 52-5 at 4.) Plaintiff filed a petition for a writ of mandamus with the Tenth Court of Appeals on January 7, 2009, seeking to enjoin his eviction and reverse the summary judgment against him and the severance order. (docs. 52-4 at 2–4; 52-5 at 2, 4.) He reasserted the two claims from his trial court petition, added a breach of contract claim under Tex. Constit. art. XVI, § 50(a)(6)(Q)(v), and requested a loan rescission. (doc. 52-4 at 4–7.)

On January 9, 2009, the court of appeals denied Plaintiff's petition, explaining that it did "not perceive any reason why [Plaintiff] [could] not address his complaints ... in a direct appeal." (doc. 52-5 at 5.) He did not file a direct appeal.[1] Accordingly, the severance order and the summary judgment in favor of these Defendants became final state court judgments for all purposes. (*Id.* at 4.) Also on January 9, 2009, Ameriquest executed the writ of possession and evicted Plaintiff and his family from the Property. (doc. 81-1 at 6.)

B. **Subsequent Federal Litigation**

Plaintiff initially filed this *pro se* suit against First Financial Bank, N.A. (FFB) on January 10, 2012. (doc. 3.) On January 23, 2012, dismissal was recommended for lack of subject matter jurisdiction. (doc. 6.) On March 2, 2012, he filed his first amended complaint against FFB;

---

[1] The filings relating to Plaintiff's state court action are available on the website of the Johnson County District Clerk's Office, http://www.johnsoncountytx.org/departments/districtclerk/ (last visited November 7, 2012).

Ameriquest; Argent; Deutsche Bank, as trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series Quest 2005-X1, Under the Pooling and Servicing Agreement Dated as of March 1, 2005; and Fidelity (collectively, Defendants).  (doc. 17.)  On October 29, 2012, he filed his second amended complaint against Defendants, expressly asserting claims for violation of the Truth in Lending Act (TILA) and fraud.  (doc. 81 at 7–9.)

Plaintiff alleges that Defendants violated TILA because he "never received his closing documents" and "never had the chance of rescission."  (*Id.* at 6.)  On numerous occasions, he contacted Fidelity to obtain copies of his closing documents, but even while his lawsuit against Fidelity was pending on appeal, he had yet to receive those documents.  (*Id.* at 5.)  Deutsche Bank and FFB violated TILA and Regulation Z by assigning a fraudulent note.  (*Id.* at 7.)  As a result of these "acts by defendants, mortgage companies, and creditors," he suffered "irreparable harm."  (*Id.* at 6.)  "Equitable tolling" should apply because he did not discover, and "could not have reasonably discovered," the TILA violations until February 7, 2012, "in reading the [Act]."  (*Id.* at 7.)  He seeks a loan rescission and statutory damages.  (*Id.* at 3, 8.)

According to Plaintiff, the additional $40,000 disbursement, purportedly processed by Fidelity without his approval, resulted in a "fraudulent second lien" being placed on the Property.  (*Id.* at 5.)  On November 28, 2011, he searched for liens on the Property but "could not find a second loan on it."  (*Id.*)  A "true fax from Ameriquest … [is] prima facie proof of the fraudulent act done on [his] homestead."  (*Id.*)  Deutsche Bank assigned a "fraudulent note" to FFB.  (*Id.* at 7.)  The security instrument "is marred by fraud, which requires the court to set aside the [lending] contract to avoid unjust enrichments [sic]."  (*Id.*)  Moreover, Defendants engaged in fraud by making a "false promise to do an Act."  (*Id.*)  No improvements were ever made on the Property and

4

any claim to the contrary is "part of the wrongful foreclosure and fraudulent lien." (*Id.* at 7–8.) The lien was fraudulent because he did not receive money, work, or materials for improvements. (*See id.* at 8.)

Although not expressly listed as a claim, Plaintiff's complaint could be liberally construed as raising a claim for wrongful foreclosure. (*See* doc. 81 at 4–6.) He contends he and his family "were wrongfully foreclosed on and evicted from [his] homestead [on] January 9, 2009." (*Id.* at 4–5.) The foreclosure was wrongful because it was conducted pursuant to a security instrument that showed $108,000 as the loan amount, but he signed for only $59,000. (*See id.* at 5.) The "wrongful foreclosure" should be set aside and Defendants should "divest any interest" they "acquired through [the] wrongful foreclosure action." (*Id.* at 9.)

Plaintiff's complaint could also be liberally construed as asserting a claim for violation of the Real Estate Settlement Practices Act (RESPA). (*See id.* at 6.) He claims that in February 2012, he sent a "Qualified Written Request [QWR] under [RESPA]" to Bruce Hildebrand, FFB's purported registered agent, and to "all agents", and one to "D. Matthew Reynolds" that was not "timely received." (*Id.*) In the QWRs, he requested copies of "the entire closing file for [his] loan," reasserted his contention about a "fraudulent second lien," and sought to "exercise [his] right to rescission pursuant to TILA and Regulation Z." (*See* doc. 81-1 at 46, 49, 50, 51, 53.)

Ameriquest, Argent,[2] and Deutsche Bank[3] (Defendants) now move to dismiss, and in the

---

[2] Ameriquest and Argent filed their motion to dismiss before the Court granted Plaintiff's motion for leave to amend his complaint. (*See* docs. 39 and 80.) In their opposition to the motion for leave to amend, they specifically requested in the alternative that their dispositive motion be deemed responsive to the second amended complaint to the extent that leave to file it was granted. (*See* doc. 46 at 2.) This request was granted. (*See* doc. 80). Accordingly, the motion to dismiss is deemed to be responsive to the second amended complaint.

[3] Deutsche Bank also filed its motion to dismiss before the Court granted Plaintiff's motion for leave, but it did not oppose Plaintiff's motion or request that its own motion be deemed responsive to the second amended complaint. (*See* docs. 50 and 80.) Because Deutsche Bank also moves to dismiss for lack of subject matter jurisdiction on the same

alternative, for summary judgment. The motions are now ripe for consideration.

## II. RULE 12(b)(1) MOTIONS

Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. (docs. 30 at 2; 50 at 1.)

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction and "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006); *see also* Fed. R. Civ. P. 12(b)(1). Courts have "a continuing obligation to examine the basis for their jurisdiction." *See MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). A court may *sua sponte* raise the jurisdictional issue at any time. *Id.*; *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 465–66 (5th Cir. 1999). Fed. R. Civ. P. 12(h)(3) requires the Court to dismiss the action if it determines that it lacks jurisdiction over the subject matter.

### A. Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."

---

grounds as Ameriquest and Argent, the second amended complaint likewise does not affect the bases for its motion, and courts may raise jurisdictional issues *sua sponte*, Deutsche Bank's motion is also deemed to be responsive to the second amended complaint. (*See* doc. 80; *MCG, Inc.*, 896 F.2d at 173; *Burge*, 187 F.3d at 465–66.)

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*. Facial attacks are usually made early in the proceedings. *Id*. When evidence is presented with the motion to dismiss, the attack is "factual" and "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, Defendants have attached court orders and filings relating to Plaintiff's state court litigation. (*See* docs. 32-1–32-6; 52-1–52-8.) Because the complaint does not reference these

7

documents, Defendants' motions present a factual attack on Plaintiff's basis for jurisdiction. Accordingly, Plaintiff's allegations will not have the presumption of truthfulness in determining whether jurisdiction exists. *See Williamson*, 645 F.2d at 413. Nevertheless, because these documents are matters of public record and their contents cannot reasonably be disputed, determination of jurisdiction does not require resolution of disputed factual matters outside the pleadings. *See* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed").

**B.** *Rooker-Feldman*

Defendants contend that Plaintiff's claims are barred under the *Rooker-Feldman* doctrine because they constitute an impermissible collateral attack on a previously-rendered state court judgment of which he essentially seeks "appellate review". (docs. 30 at 2; 51 at 9.)

The *Rooker-Feldman* doctrine[1] divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 125 S. Ct. 1517, 1521–22 (2005). "'[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'" *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994)). Under 28 U.S.C. § 1257, the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered

---

[1] This doctrine is named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). These decisions "exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 290 (2005).

by the highest court of a state. Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).

This jurisdictional bar is not limited to actions in which the plaintiff explicitly seeks review of a state court judgment, but extends even to those cases "'in which the [federal] claims presented . . . are inextricably intertwined with the state court's grant or denial of relief.'" *Jordaan v. Hall*, 275 F. Supp. 2d 778, 788 (N.D. Tex. 2003) (quoting *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986). The phrase "inextricably intertwined" describes "a conclusion that a federal claim asserts an injury whose source is the state court judgment." *Rainwater v. 21st Mortg. Corp.*, No. 1:09-CV-331, 2010 WL 1330624, at *3 (E.D. Tex. Feb. 25, 2010), *report and recommendation adopted*, 2010 WL 1328845 (E.D. Tex. Mar. 29, 2010). This ensures that federal plaintiffs do not "circumvent [the *Rooker-Feldman*] jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief." *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). However, the doctrine does not bar "a plaintiff's 'independent claim,' even 'one that denies a legal conclusion that a state court has reached.'" *Brooks v. Flagstar Bank, FSB*, No. CIV.A. 11-67, 2011 WL 2710026, at *3 (E.D. La. July 12, 2011) (*citing Exxon Mobil*, 544 U.S. at 293) (internal citation omitted)). An independent claim is one that "do[es] not have the sole purpose of challenging the state court's [judgment]." *Id.* *4.

**C.    Plaintiff's Federal Claims**

Here, Plaintiff did not file a direct appeal after the court of appeals denied his petition for a writ of mandamus. The summary judgment in Defendants' favor is therefore a final state court

9

judgment "rendered before the district court proceedings commenced". Accordingly, his federal claims are barred by *Rooker-Feldman* if they are "inextricably intertwined" with that judgment. *See Exxon Mobil*, 125 S. Ct. at 1520; *see also Jordaan*, 275 F. Supp. 2d at 788.

    **1.**     **TILA Claim**

TILA protects borrowers in credit transactions by requiring a full and clear disclosure of all the key terms of the lending arrangement. *Rainwater*, 2010 WL 1330624, at *2. In certain credit transactions that involve a lien on the borrower's principal dwelling, the borrower has "the right to rescind the transaction until midnight of the third business day following [its] consummation." 15 U.S.C.A. § 1635(a); 12 C.F.R. § 226.1(b) (2011). The creditor must disclose this right to the borrower and provide him with the appropriate forms to enable him to exercise it. *See* 15 U.S.C. § 1635(a). Regulation Z requires the creditor to make numerous disclosures including the amount financed, the finance charge, and information regarding debt cancellation. *See Patterson v. Long Beach Mortg. Co.*, No. CIV.A.3:07CV1602OBH, 2009 WL 4884151, at * (N.D. Tex. Dec. 15, 2009); *see also* 12 C.F.R. § 226.18. TILA allows for private suits to enforce its provisions and to remedy violations. *See* 15 U.S.C. § 1640(e).

Liberally construed, Plaintiff's second amended complaint alleges that Defendants violated § 1635(a) of TILA and Regulation Z by failing to provide him with the mandatory disclosures and notice of his right of rescission. (*See* doc. 81 at 7–8.) Deutsche Bank violated TILA and Regulation Z by assigning a fraudulent note. (*Id.* at 7.) As a result, he seeks to rescind the loan and recover statutory damages. (*Id.* at 3, 7–8.)

No TILA claim was ever asserted in Plaintiff's state litigation. He did raise a "right of rescission" claim under the Texas Constitution in his petition for a writ of mandamus, which the

court of appeals dismissed. (*See* doc. 52-4 at 5.) While he now attempts to frame this claim as an "original claim for relief," the remedies he seeks show that the sources of his injuries is not any TILA violation, but the state court judgment. By seeking to rescind the loan he obtained from Argent and recover damages in connection to it, he essentially seeks to set aside the state court judgment that enforced it. Accordingly, this claim is barred by *Rooker-Feldman* and must be dismissed. *See Rainwater*, 2010 WL 1330624, at *3 (dismissing TILA claim as barred by *Rooker-Feldman* because the remedies the plaintiff sought—to cancel his mortgage contract and enjoin the enforcement of a foreclosure judgment—showed that he was "complaining of an injury caused by the state-court foreclosure judgment").

    **2.    Fraud Claim**

There are two types of common law fraud in Texas: simple fraud and fraudulent inducement. The elements of simple fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Adams v. Chase Bank*, No. 3:11-CV-3085-M, 2012 WL 2122175, at *5 (N.D. Tex. May 11, 2012)(citing *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (internal citation omitted)), *report and recommendation adopted*, 2012 WL 2130907 (N.D. Tex. June 12, 2012). A claim for fraudulent inducement has the same elements, but also requires an underlying contract which was induced. *Id.* (internal citations omitted).

According to Plaintiff's complaint, the security instrument was fraudulent because he did

not authorize the additional $40,000 disbursement. (doc. 81 at 5, 7.) As a result, a fraudulent second lien was placed on the Property. (*Id.* at 5, 7–8.) Defendants engaged in fraud because he never received money, work, or materials to build improvements. (*Id.* at 8.) Although he made the same allegations in his state court action and sought to reverse the foreclosure, he now also seeks to recover damages and to cancel the loan agreement "to avoid unjust enrichment." (*See* docs. 52-1 at 3; 52-4 at 5–6; 81 at 7–9.)

By granting Defendants' motion for summary judgment, the state court held that Plaintiff's fraud claim failed as a matter of law. (*See* doc. 52-3 at 2.) Voiding the lending agreement and awarding him damages would constitute a reversal of the state court judgments. His fraud claim is a collateral attack on the state court judgment and the relief he seeks demonstrates that the claim is "inextricably intertwined with the state court's ... denial of relief." *See Jordaan*, 275 F. Supp. at 778. Accordingly, this claim is also barred by *Rooker-Feldman* and must be dismissed. *See Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 335–36 (5th Cir. 2011) (per curiam) (not selected for publication) (affirming dismissal because the record showed that the plaintiff "initiated the ... federal proceedings to attack collaterally and to enjoin a preexisting state judgment" and because her claims were "inextricably intertwined" with that judgment).

### 3. Wrongful Foreclosure Claim

In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Hurd v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1752-M, 2012 WL 1106932, at *15 (N.D. Tex. Mar. 29, 2012) (citation omitted). The plaintiff must prove: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly

inadequate selling price." *Id.* (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect." *Id.* (citing *Biggers v. BAC Home Loans Servicing, LP,* 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, J.)).

To the extent that Plaintiff alleges a claim for wrongful foreclosure, (*see* doc. 81 at 4–5, 7–8), he asserted this claim in his state proceedings. (*See* docs. 52-1 at 3; 52-4 at 7.) As in those proceedings, he now seeks to set aside the foreclosure and regain the ownership and possession of the Property. (*See* docs. 81 at 9; 52-1 at 3.) By granting summary judgment in favor of Defendants, the state court determined that the foreclosure and Plaintiff's subsequent eviction were proper. (*See* doc. 52-3 at 2.) Setting aside the foreclosure, awarding damages to Plaintiff, and returning the Property to him, would essentially nullify the state court's judgment. Like his fraud claim, his wrongful foreclosure allegations amount to a collateral attack on the state court's judgment and the remedies he seeks show his allegations to be inextricably intertwined with that judgment. Accordingly, any wrongful foreclosure claim is barred by *Rooker-Feldman* and must be dismissed. *See Magor*, 456 F. App'x at 335–36.

    **4.    RESPA**

Finally, Plaintiff appears to assert a claim under RESPA by stating that he sent QWRs to Defendants. (*See* doc. 81 at 6.) RESPA was enacted to ensure that real estate consumers are provided with sufficient and accurate information about the settlement process. *Snow v. First American Title Ins. Co.,* 332 F.3d 356 (5th Cir.2003). It applies to the servicing of federally-related mortgage loans. *Naddour v. Nationstar Mortg., LLC*, No. 3:11-CV-1096-B, 2012 WL 4473127, at

*5 (N.D. Tex. Sept. 27, 2012) (citing to 12 U.S.C. §§ 2601(a) and 2605(a)). Under RESPA, if a loan servicer receives a qualified written request (QWR) from the borrower for information about the loan, the servicer must acknowledge the receipt of the QWR within 20 days unless it takes other action requested by the borrower within that period. *See* 12 U.S.C. §§ 2605(e)(1)–(2); 24 C.F.R. § 3500.21(e) (2012). RESPA defines a QWR as:

> A written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, . . . that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] . . . includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B) (West 2011). The QWR must relate to the servicing of the loan. *Id.* § 2605(e)(1) (A); 24 C.F.R. § 3500.21(e)(2).

Here, Plaintiff's QWRs were sent to a "physical address ... *allowing the TILA time to start.*" (*See* doc. 81 at 6) (emphasis added). He requested copies of the "closing documents," reasserted his allegation about a "fraudulent second lien," and sought to rescind the loan "pursuant to TILA and Regulation Z." (*See* doc. 81-1 at 49.) Plaintiff's QWRs relate more to his TILA and fraud claims than to the servicing of the loan, and he seeks the same relief as for those claims. His RESPA claim, if any, solely seeks to challenge the state court judgment. *See Brooks*, 2011 WL 2710026, at *4. As with Plaintiff's claims for violation of TILA and fraud, any RESPA claims are "inextricably intertwined" with the state court's judgment and are also barred by *Rooker-Feldman*. *See Carter v. Deutche Bank Nat. Trust Co.*, No. 10-797, 2010 WL 3074323, at *2 (E.D. La. Aug. 2, 2010) (dismissing RESPA claim under *Rooker-Feldman* doctrine based on finding that the plaintiff's constitutional and statutory allegations were "inextricably intertwined" with the state court's judgment ordering the issuance of a writ of seizure and sale). Accordingly, any RESPA

14

claim should also be dismissed.[2]

## III. RECOMMENDATION

Defendants' motions to dismiss for lack of subject matter jurisdiction should be **GRANTED** and their alternative motions to dismiss for failure to state a claim and for summary judgment should be **DENIED as moot**. Plaintiff's claims against Ameriquest, Argent, and Deutsche Bank for violation of TILA and fraud, as well as any claims for wrongful foreclosure and violation of RESPA, should be dismissed without prejudice for lack of subject matter jurisdiction.

**SO RECOMMENDED** on this 12th day of November, 2012.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[2] Because dismissal of Plaintiff's claims under *Rooker-Feldman* has been recommended, it is unnecessary to consider Defendants' alternate Rule 12(b)(6) grounds for dismissal or their motions for summary judgment under Rule 56.

15