**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RICKEY FANTROY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-0082-N (BH)** |
| | § | |
| **FIRST FINANCIAL BANK, N.A., et al.,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management. Before the Court for recommendation are *Defendant's Motion to Dismiss for Failure to State a Claim or Alternatively Motion for Summary Judgment*, filed March 13, 2012 (doc. 25) and *Plaintiff's Motion[s] for Summary Judgment*, filed April 3, 2012 (doc. 41) and April 5, 2012 (doc. 44).[1]  Based on the relevant filings and applicable law, Defendant's motion to dismiss should be **GRANTED,** its alternative motion for summary judgment should be **DENIED as moot**, and Plaintiff's motions for summary judgment should be **DENIED**.

## I.  BACKGROUND

This is an action involving foreclosure of real property located at 405 N. Trinity, Cleburne, Texas 76031(the Property).  (*See* doc. 81 at 7–8.)  Plaintiff Rickey Fantroy (Plaintiff) initially filed this *pro se* suit against First Financial Bank, N.A. (FFB or Defendant) on January 10, 2012.  (doc. 3.)  On January 23, 2012, dismissal was recommended for lack of subject matter jurisdiction.  (doc.

---

[1]  Defendant filed its motion to dismiss before the Court granted Plaintiff's motion for leave to amend his complaint. (*See* docs. 39 and 80.)  In its opposition to the motion for leave to amend, Defendant specifically requested in the alternative that its dispositive motion be deemed responsive to the second amended complaint to the extent that leave to file it was granted.  (*See* doc. 43 at 2–3.)  This request was granted.  (*See* doc. 80).  Accordingly, Defendant's motion to dismiss is deemed to be responsive to the second amended complaint.

6.)  On March 2, 2012, he filed his first amended complaint against FFB; Ameriquest Mortgage Company (Ameriquest); Argent Mortgage Company (Argent); Deutsche Bank National Trust Company, as trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series Quest 2005-X1, Under the Pooling and Servicing Agreement Dated as of March 1, 2005 (Deutsche Bank); and Fidelity National Title Insurance Company (Fidelity) (collectively, Defendants).  (doc. 17).  After being granted leave, Plaintiff filed his second amended complaint against Defendants on October 29, 2012, expressly asserting claims for violation of the Truth in Lending Act (TILA) and Regulation Z and for fraud.  (*See* doc. 81 at 4–8.)  He seeks statutory and compensatory damages, pre and post-judgment interest, attorney's fees, costs of suit, loan rescission, and injunctive relief.  (*Id.* at 3, 7–9.)

Plaintiff alleges that on April 9, 2004, he obtained a home equity loan from Argent to refinance the Property, his homestead.  (*Id.* at 4.)  Although he claims he "only signed a refinance for $59,000," an additional $40,000 was disbursed, bringing the loan total to $109,894.20.  (*Id.* at 5.) To secure the loan, he signed a "Texas Home Equity Security Instrument" for $108,000, granting Argent a first lien on the Property.  (*See* doc. 81-1 at 8.)  Plaintiff apparently defaulted, and on May 24, 2006, Deutsche Bank obtained an "order to proceed with notice of foreclosure and foreclosure sale."  (*Id.*)  On November 7, 2006, the substitute trustee sold the Property to Deutsche Bank, as trustee, at a foreclosure sale for $99,000.  (*Id.* at 8–9.)  On May 13, 2009, Deutsche Bank sold the Property to a private buyer who executed a promissory note in favor of FFB as part of the purchase price. (*Id.* at 15.)

Plaintiff alleges that Defendant violated TILA and Regulation Z because he "never received his closing documents" and "never had the chance of rescission."  (doc. 81 at 6.)  He contacted

Fidelity numerous times since signing his loan to obtain copies of his closing documents, but as of the date he filed suit, he had yet to receive them. (*See id.* at 5–6.) Additionally, Deutsche Bank and FFB committed a violation by participating in the assignment of a fraudulent note. (*Id.* at 7.) Consequently, he seeks loan rescission and statutory damages. (*Id.* at 3, 8.) He seeks equitable relief from the relevant limitations periods through equitable tolling and the discovery rule, explaining that he did not discover, and "could not have reasonably discovered," the purported violations until February 7, 2012, after reading TILA. (*Id.* at 7.)

Plaintiff avers that the security instrument he signed "is marred by fraud" because he did not authorize the additional $40,000 disbursement. (*Id.* at 5.) A "true fax from Ameriquest ... [is] prima facie proof of the fraudulent act done on [his] homestead." (*Id.*) He also claims that fraudulent security instrument he signed resulted in a second, fraudulent lien being placed on the Property. (*Id.* at 4.) Even after the instrument was assigned to FFB, the fraudulent lien was never recorded in the Johnson County's office of public records. (*Id.* at 4–5.)

He contends that he and his family "were wrongfully foreclosed on and evicted from [his] homestead [on] January 9, 2009." (*Id.* at 4–5.) The foreclosure was wrongful because it was conducted pursuant to a security instrument that showed $108,000 as the loan amount, but he signed for only $59,000. (*See id.* at 5.) Defendant allegedly violated article XVI, § 50 of the Texas Constitution because the Property was foreclosed upon pursuant to a lien, but he never received purchase money, property taxes, "or work and materials" used for building improvements on the Property. (*Id.*) Finally, Plaintiff claims that in February 2012, he sent a "Qualified Written Request [QWR] under [RESPA]" to Bruce Hildebrand, FFB's purported registered agent, and to "all agents." (*Id.*) In the purported QWRs, he requested copies of his closing documents, reasserted his

contention about a "fraudulent second lien," and sought to "exercise [his] right to rescission pursuant to TILA and Regulation Z." (*See* doc. 81-1 at 46, 49, 50, 51, 53.)

Defendant now moves to dismiss, and in the alternative, for summary judgment. Plaintiff also moves for summary judgment. The motions are now ripe for recommendation.

## II.  RULE 12(b)(6) MOTION

Defendant moves to dismiss Plaintiff's claims for violations of TILA and Regulation Z and for fraud under Fed. R. Civ. P. 12(b)(6). (docs. 25 at 1; 26 at 8–10.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Id.* at 555.  The alleged facts must "raise a right to relief above the speculative level." *Id.*  In short,

a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough

facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged.  The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a defendant's liabil-
> ity, it "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at

570; *accord Iqbal*, 129 S. Ct. at 1950–51.

## A.       TILA and Regulation Z

Defendant moves to dismiss Plaintiff's claims for rescission and statutory damages under

TILA and Regulation Z, arguing that they are barred by the statute of limitations.  (doc. 26 at 8.)

Although the statute of limitations is an affirmative defense, a defendant may move for

dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[] on the face of the

complaint." *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No.

3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance

Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

### 1.       *Right of Rescission*

Liberally construed, Plaintiff's complaint alleges that Defendant violated TILA by failing

to provide him with notice of his right of rescission, the necessary forms to enable him to exercise

it, and a copy of his loan documents.  (*See* doc. 81 at 3–4, 7).  Consequently, he now seeks loan

rescission pursuant to § 1635(a).  (*See id.* at 3, 8.)

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Schieroni v. Deutsche Bank Nat. Trust Co.*, No. CIV.A. H-10-663, 2011 WL 3652194, at *3 (S.D. Tex. Aug. 18, 2011) (citations omitted); *see also* 15 U.S.C.§ 1601; 12 C.F.R. § 226.1(b).  In certain credit transactions involving a lien on the borrower's principal dwelling, the borrower has "the right to rescind the transaction until midnight of the third business day following [its] consummation."  15 U.S.C.A. § 1635(a) (West 2011); 12 C.F.R. § 226.23(a).  The creditor must disclose this right to the borrower and provide him with the appropriate forms to enable him to exercise it.  *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b).

The limitations period for a right of rescission claim under TILA is "three years after the date of the consummation of the transaction ... notwithstanding the fact that the information and forms required under [§ 1635(a)] or any other disclosures ... have not been delivered to the obligor."  15 U.S.C.A. § 1635(f).  In *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998), the Supreme Court held that TILA "permits no federal right to rescind ... after the 3-year period of § 1635(f) has run." Accordingly, courts have held that § 1635(f) "mirrors a typical statute of repose" in that it absolutely bars rescission claims filed more than three years after the loan transaction is consummated.  *See Renfrow v. CTX Mortg. Co.*, LLC, No. 3:11-CV-3132-L, 2012 WL 3582752, at *5 (N.D. Tex. Aug. 20, 2012) (collecting cases).  Because Plaintiff's credit transaction was consummated on April 9, 2004, any right of rescission violation occurred on that date.  *See Val-Com*, 2011 WL 2312284, at *2; *see also* 15 U.S.C. §§ 1635(a).  Accordingly, the limitations period for his right of rescission claim expired on April 9, 2007.

Although he first asserted his claim nearly eight years after his credit transaction was

consummated, and well after the limitations period expired, he seeks relief from the statute of limitations through equitable tolling and the discovery rule. (*See* doc. 81 at 7); (*see also* docs. 41; 44). Because § 1635(f) completely bars any rescission claim filed after the three-year limitations period has run, neither equitable tolling nor the discovery rule apply to Plaintiff's claim for rescission as a matter of law. *See Beach*, 523 U.S. at 419; *Lowery v. Capital One Mortg.*, 429 Fed. App'x 377, 378 (5th Cir. 2011) (per curiam) (citing *Beach*); *Renfrow*, 2012 WL 3582752, at *5.

### 2.      Nondisclosure Claim

Liberally construed, Plaintiff's complaint states that Defendant committed a nondisclosure violation by failing to provide him with a copy of his loan documents. (*See* doc. 81 at 3–4.) He appears to seek statutory damages pursuant to § 1640(a)(2)(A). (*See id.* at 8.)

Both TILA and Regulation Z, which was issued by the Federal Reserve Board to implement TILA, require creditors to make numerous disclosures in a credit transaction, including the amount financed, the finance charge, the total sale price, and information regarding debt cancellation. *See* 15 U.S.C. § 1639(a); 12 C.F.R. §§ 226.1(a), 226.17–18. "Concluding a credit transaction without making the required disclosures constitutes a TILA nondisclosure violation," which occurs "when the transaction is consummated." *Val-Com Acquisitions Trust v. Bank of Am.*, N.A., No. 3:10-CV-01965-M, 2011 WL 2312284, at *2 (N.D. Tex. June 9, 2011) (Lynn, J.) (citing *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986)). TILA authorizes private suits and allows recovery of statutory damages to ensure proper disclosure and remedy nondisclosure violations. *See* 15 U.S.C. § 1640(a)(2)(A).

Plaintiff's claim for statutory damages based on nondisclosure is "subject to a different analysis" for purposes of limitations than his rescission claim. *Renfrow*, 2012 WL 3582752, at *5.

7

The limitations period for a statutory damages claim based on a nondisclosure violation is one year. *See* 15 U.S.C. § 1640(e); *Renfrow*, 2012 WL 3582752, at *3. Because "nondisclosure is not a continuing violation for purposes of the statute of limitations," this one-year period begins to run on the date the loan transaction is consummated. *Moor*, 784 F.2d at 633; *see also* 15 U.S.C. § 1640(e) (providing that an action for statutory damages must be brought within one year "from the date of the occurrence of the violation"). Given that Plaintiff's credit transaction was consummated on April 9, 2004, any non-disclosure violation occurred on that date. *See Val-Com*, 2011 WL 2312284, at *2; *see also* 15 U.S.C. § 1640(e). Accordingly, the limitations period for his statutory damages claim expired on April 9, 2005.

                a.     <u>Equitable Tolling</u>

Plaintiff argues that his suit is timely because equitable tolling applies to his nondisclosure claim, given that "despite due diligence," he did not and "could not have reasonably discovered" the "concealed TILA violation[]" until he read the statute in February 2012. (doc. 81 at 7.)

The Fifth Circuit has generally held that "[e]quitable tolling should be applied 'sparingly.'" *Dupree v. United States*, No. 12-60326, 2012 WL 5195820, at *2 (5th Cir. Oct. 22, 2012) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). It has held for example, that "equitable tolling may be appropriate when 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) (citation omitted).

The Fifth Circuit has not yet specifically ruled on the issue of whether equitable tolling applies to claims for statutory damages under § 1640(a)(2)(A) based on nondisclosure violations. In *Moor,* the Court generally stated that "[t]o clothe himself in the protective garb of the tolling

doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct." *Moor*, 784 F.2d at 633.  In that case, it held that the plaintiff could not allege that the defendant concealed material facts because "[t]he causative fact was [the defendant's] failure to disclose the required information when the loan was concluded," and the plaintiff "knew or should have known of this failure as of that date." *Id.* at 633–34.

Relying on *Moor*, district courts in this circuit have held that even if equitable tolling applies to the one-year statute of limitations provided by § 1640(e) of TILA, a plaintiff must allege and ultimately show other wrongful conduct by part of the defendant beyond the nondisclosure itself to obtain relief.  *See, e.g.*, *Renfrow*, 2012 WL 3582752, at *4 (N.D. Tex. Aug. 20, 2012) (holding that "a mere nondisclosure does not provide sufficient grounds for tolling the statute of limitations"); *see also Val-Com Acquisitions Trust v. Citimortgage, Inc.*, No. 4:10-CV-567-A, 2011 WL 825096, at *3 (N.D. Tex. Mar. 3, 2011) (McBryde, J.) (denying the plaintiffs' request for equitable tolling with respect to their nondisclosure claim because they "neither alleged, nor adduced evidence of, any conduct by [the] defendant of the type contemplated by the Fifth Circuit [in *Moor*] to warrant tolling"); *Misczak v. Chase Home Fin., LLC*, No. 4:10-CV-739-Y, 2011 WL 145263, at *2 (N.D. Tex. Jan. 18, 2011), *aff'd sub nom. Misczak v. Chase Home Fin., L.L.C.*, 444 F. App'x 35 (5th Cir. 2011) (holding that the plaintiffs could not invoke equitable tolling with respect to their nondisclosure claim because they "wholly fail[ed] to allege any facts suggesting that [the defendants] purposefully concealed anything from them"); *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 478 (S.D. Tex. 2000) (explaining that "fraudulent conduct, beyond the nondisclosure itself, is necessary to permit the one-year period to be equitably tolled").

Here, any nondisclosure violation by Defendant occurred on the date Plaintiff's loan transaction was consummated, and he should have known of it as of that date.  *See Moor*, 784 F.2d at 633–34.  Not only does he fail to allege that Defendant concealed its purported failure to provide him with his closing documents, which is the basis of his claim, he actually concedes that he knew of it because he "contacted Fidelity ... numerous times since ... April 2004 ... [to] ask for [his] records."  (*See* doc. 81 at 5.)  Accordingly, he cannot invoke equitable tolling to obtain relief from the statute of limitations.  *See Val-Com Acquisitions Trust*, 2011 WL 825096, at *3; *Misczak*, 2011 WL 145263, at *2.[1]

> b.   Discovery Rule

Plaintiff also seeks equitable relief from the statute of limitations through the discovery rule. (*See* docs. 41 at ¶¶ 3,6, 18; 44).

The discovery rule is "a 'very limited exception' to statutes of limitations."  *Colonial Penn. Ins. v. Mkt. Planners Ins. Agency, Inc.*, 157 F.3d 1032, 1034 (5th Cir.1998) (citation omitted). Under this exception, the cause of action does not accrue "until such time as the claimant discovers, or in exercising reasonable diligence should have discovered, facts that indicate he has been injured."  *Id.*  It generally applies to cases in which "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."  *Hannaway v. Deutsche Bank Nat. Trust Co.*, No. A-10-CV-714-LY, 2011 WL 891669, at *4 (W.D. Tex. Mar. 11, 2011).  An injury is "inherently undiscoverable" if the "plaintiff did not and could not know of [it]."  *Colonial*

---

[1]  Plaintiff's argument that he should obtain the equitable relief he seeks because he did not learn of the purported TILA violations until he read the statute is without merit.  *See,e.g., Hannaway*, 2011 WL 891669, at *4 (explaining that a plaintiff's "ignorance of the law ... is not a valid reason to apply the discovery rule; rather 'the discovery rule applies to the knowledge of facts on the part of the [plaintiff] as opposed to [his] *knowledge of the law*.'" (citation omitted) (emphasis in original).

*Penn Ins.*, 157 F.3d at 1034.

As with equitable tolling, the Fifth Circuit has not yet ruled on the issue of whether the discovery rule applies to nondisclosure claims.  Relying on *Moor*, courts in this district have declined to apply the discovery rule in cases where the plaintiff's nondisclosure claim was based solely on the defendant's failure to make the requisite disclosures.  *See, e.g.*, *Val-Com Acquisitions Trust*, 2011 WL 825096, at *3 (declining to apply the discovery rule where the nondisclosure claim was based on the nondisclosure itself and the plaintiffs neither alleged nor showed other wrongful conduct by part of the defendant).  Courts have also denied the application of the discovery rule where the plaintiff learned of the nondisclosure violation before the limitations period for his claim expired.  *See Val-Com*, 2011 WL 2312284, at *3 (holding that the plaintiffs could not obtain equitable relief from the statute of limitations through the discovery rule because they conceded that the nondisclosure violation was "apparent on the face of the loan documents").

As noted above, any nondisclosure violation by part of Defendant occurred on the date his loan transaction was consummated.  *See Moor*, 784 F.2d at 633–34; doc. 81 at 5.  Because he effectively concedes that he discovered Defendant's purported violation before the statute of limitations for his claim expired, he cannot invoke the application of the discovery rule.  *See Val-Com*, 2011 WL 2312284, at *3.

Because it is apparent from the face of the second amended complaint that Plaintiff's rescission and nondisclosure claims under TILA and Regulation Z are time-barred, and he cannot obtain equitable relief from the limitations period, these claim should be dismissed with prejudice.[2]

---

[2]   Defendant also argues that Plaintiff's claims should be dismissed because his loan transaction was "exempt from the TILA statute" and because Defendant was not a "creditor" to Plaintiff.  (doc. 26 at 8.)  Because the limitations issue is dispositive, it is not necessary to reach these arguments.

B.        **Fraud**

Defendant moves to dismiss Plaintiff's fraud claim, arguing that he has failed to plead any

misrepresentations or fraudulent conduct on the part of Defendant.[3]  (doc. 26 at 9.)

In Texas, the elements of fraud are: (1) the defendant made a representation to the plaintiff;

(2) the representation was material; (3) the representation was false; (4) when the defendant made

the representation, the defendant knew it was false or made the representation recklessly and without

knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act

on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff

injury.  *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33

(5th Cir. 2010)).

Plaintiff alleges that the security instrument he signed on April 9, 2004 was fraudulent

because he did not authorize the additional $40,000 disbursement; as a result, a fraudulent lien was

created on the Property.  (*See* doc. 81 at 5, 7–8.)  He fails to state a fraud claim against Defendant,

however, because he does not allege that it was involved in his credit transaction.  He states that he

---

3

   Defendant also argues that Plaintiff's fraud claim is time-barred, but this defense does not dispose of this claim at
this stage of the proceedings because he has plead sufficient facts to support his claim for equitable relief from the
statute of limitations.  Texas law provides two equitable remedies to toll the statute of limitations for fraud claims,
the "discovery rule" and "fraudulent concealment".  *See BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65, 67 (Tex.
2011); *see also  Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).  Under the discovery rule, "[t]he statute of
limitations … does not begin to run until the fraud is discovered, or until the plaintiff acquires such knowledge as
would lead to its discovery if reasonable diligence was exercised." *Berkley v. Am. Cyanamid Co.*, 799 F.2d 995, 998
(5th Cir. 1986) (citing *Whatley v. National Bank of Commerce*, 555 S.W.2d 500, 505 (Tex. Civ. App.—Dallas 1977,
no writ)).  Similarly, fraudulent concealment "tolls the running of limitations until the fraud is discovered or could
have been discovered with reasonable diligence."  *BP Am. Prod. Co.*, 342 S.W.3d at 67  (citation omitted).  Plaintiff
alleges he exercised reasonable diligence in attempting to discover the facts that form the basis of his fraud claim,
that he tried to obtain copies of his loan documents by contacting Fidelity numerous times and mailing Defendant
written requests, and that he searched for liens on the Property at the Johnson County's Office of Deeds and
Records.  (*See* doc. 81 at 4–5.)

obtained his loan from Argent and that a "true fax from Ameriquest" reveals "the fraudulent act." (*See id.* at 4.)  Defendant's only alleged transaction involving the Property occurred in May 2009, when it extended a purchase-money loan to a new buyer.  (*See* doc. 81-1 at 15.)  Accordingly, Plaintiff's fraud claim against it should be dismissed under Rule 12(b)(6) for failure to state a claim.

## III.  REMAINING CLAIMS

Although not expressly listed as claims, the allegations in Plaintiff's complaint may be liberally construed as also asserting claims for violation of Real Estate Settlement Practices Act (RESPA), wrongful foreclosure, violation of article XVI, § 50 of the Texas Constitution, and creation of a fraudulent lien under § 12.002(a) of the Tex. Civ. Prac. & Rem. Code.  The Court may *sua sponte* dismiss these claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as Plaintiff has notice of the Court's intention and an opportunity respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08cv127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

## A.    RESPA

Plaintiff's complaint appears to assert a claim under RESPA by stating that he sent a "QWR" to Defendant's agent and to "all agents".  (*See* doc. 81 at 6.)

RESPA seeks to provide consumers with information regarding the real estate settlement process, and also applies to the servicing of federally-related mortgage loans.  *See* 12 U.S.C. §§ 2601(a) and 2605(a)).  Under RESPA, if a loan servicer receives a qualified written request (QWR) from the borrower for information about the loan, the servicer must acknowledge the receipt

of the QWR within 20 days unless it takes other action requested by the borrower within that period.

*See* 12 U.S.C.A. §§ 2605(e)(1)–(2) (West 2011); 24 C.F.R. § 3500.21(e) (2012).  A QWR is:

> A written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, . . . that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] . . . includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B).  The QWR must relate to the "servicing" of the loan, which is defined as "receiving any scheduled periodic payments from a borrower" and "making the payments of principal and interest ... received from the borrower as may be required pursuant to the terms of the loan."  *Id.* §§ 2605(i)(3), 2605(e)(1)(A).  However, a "written request does not constitute a [QWR] if it is delivered to the servicer more than 1 year after either the date of transfer of servicing or the date that the mortgage servicing loan amount was paid in full, whichever date is applicable."  24 C.F.R. § 3500.21(e)(2)(ii).

Here, Plaintiff avers that he sent a QWR to Defendant's agent and to "all agents" in February 2012, "allowing the TILA time to start."  (doc. 81 at 6.)  However, the purported QWRs related more to his TILA and fraud claims than to any inquiry about his loan servicing because he requested copies of his closing documents, reasserted his belief about a fraudulent second lien, and sought to rescind his home equity loan "pursuant to TILA and Regulation Z."  (*See* docs. 81-1 at 49.)  Most importantly, because he sent them more than five years after his loan was terminated by the foreclosure and therefore ceased to be serviced, they were not QWRs under RESPA.[4]  *See* 24 C.F.R.

---

[4] According to the Texas Constitution, home equity loans "must ... be made pursuant to a nonrecourse note."  *Smith v. JP Morgan Chase Bank, Nat. Ass'n*, 825 F. Supp. 2d 859, 863 (S.D. Tex. 2011) (citing to Tex. Const. art. XVI, § 50(a)(6)(C)).  A nonrecourse note, "upon default, is payable only out of the specific collateral, with no possibility of a deficiency judgment against the debtor, personally."  *Id.* (citing to *Pineridge Associates, L.P. v. Ridgepine, LLC*, 337 S.W.3d 461, 465 (Tex. App.—Fort Worth 2011, no pet.)).  That is, because "the maker of a nonrecourse loan 'does not

§ 3500.21(e)(2)(ii); *see also Cavil v. Trendmaker Homes, Inc.*, No. CIV.A. G-10-304, 2012 WL 170751, at *3 (S.D. Tex. Jan. 19, 2012) (holding that the plaintiff's correspondence was not a QWR because "it was not sent until months after the ... foreclosure sale ... a point in time in which [the defendants] were no longer a 'servicer' of the loan").

To the extent that Plaintiff's complaint asserts a claim under RESPA, he fails to state a claim against Defendant as a matter of law, and the claim should be *sua sponte* dismissed.

## B.   Wrongful Foreclosure

Plaintiff's claim that he and his family "were wrongfully foreclosed on" appears to assert a "wrongful" foreclosure claim. (*See* doc. 81 at 4–5, 7–8.) He fails to state a claim against Defendant because he does not allege that it was involved in any of the foreclosure proceedings. The substitute trustee's deed reveals that the trustee obtained an "order to proceed with notice of foreclosure and foreclosure sale" and that the substitute trustee conducted the foreclosure sale. (*See* doc. 81-1 at 8–9.) Because Plaintiff has failed to state a claim for wrongful foreclosure against Defendant, the Court may *sua sponte* dismiss it under Rule 12(b)(6). *See Carroll*, 470 F.3d at 1177.

## C.   Texas Constitutional Claim

Plaintiff's complaint also invokes article XVI, subsections 50(a)(1), (2), (5), and (6) of the Texas Constitution. (*See* doc. 81 at 8.) He essentially argues that Defendant violated these provisions by creating a lien on the Property and foreclosing on it but failing to provide him with purchase money, property taxes, or money or materials to build improvements. (*See* doc. 81 at 8.)

---

personally guarantee repayment of the note,'" he "has no personal liability beyond the loss of the collateral securing the note." *Pineridge Associates, L.P.*, 337 S.W.3d at 465 (citation omitted). Here, because the loan at issue was a home equity loan, the loan and Plaintiff's obligation to pay it were extinguished when the Property was foreclosed on November 7, 2006.

Article XVI, § 50 of the Texas Constitution provides in relevant part:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
(1) the purchase money thereof, or a part of such purchase money;
(2) the taxes due thereon ...

(5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon if ...

(6) an extension of credit that:
(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse ....

Tex. Const. art. XVI, § 50(a)(1)-(2), (5)-(6).  Plaintiff fails to state a valid claim against Defendant for violation of article XVI, § 50 of the Texas Constitution because he does not allege that Defendant was the lender of his home equity loan or that it was involved in any of the foreclosure proceedings.  Accordingly, this claim should also be *sua sponte* dismissed.

**D.     Fraudulent Lien**

Finally, Plaintiff's allegation that Defendant participated in the assignment of a fraudulent security instrument, which created a fraudulent lien on the Property, appears to assert a fraudulent lien claim under § 12.002(a) of the Tex. Civ. Prac. & Rem. Code.  (*See* doc. 81 at 4–5, 7–8.)

The Code establishes the requirements for this cause of action, providing in relevant part:

A person may not make, present, or use a document or other record with:
(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
(3) intent to cause another person to suffer:
(A) physical injury;

16

        (B) financial injury; or
        (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code § 12.002(a); *see also Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692

F.3d 358, 369–70 (5th Cir. 2012).

      Here, even if Defendant became the assignee of a fraudulent security instrument, Plaintiff

still fails to allege any facts showing that Defendant had knowledge that it was fraudulent, intended

that it be given the same legal effect as a valid lien, or that Defendant intended to injure Plaintiff or

cause him mental anguish or emotional distress.  Accordingly, this claim should also be *sua sponte*

dismissed for failure to state a claim.

### IV.  OPPORTUNITY TO AMEND

      Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro*

*se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v.*

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically

allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to court

order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Nos. 3:96-CV-2923-D, 3:97-

CV-0353-D, 2004 WL 789870, at *2 (N.D. Tex. Apr.12, 2004); *Sims*, 2001 WL 627600, at *2.  *Pro*

*se* litigants may also amend their complaint in response to a recommended dismissal.  *See Swanson*

*v. Aegis Commc'ns Group, Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5,

2010); *Scott*, 2008 WL 398314, at *1.  However, a court may appropriately dismiss an action with

prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his best

case.  *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).  A court may also deny the

opportunity to amend if the amendment is futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962);

*Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Plaintiff has filed a motion for leave to file a third amended complaint. (*See* doc. 96.) His proposed third amended complaint states that the basis of his nondisclosure claim is Defendant's purported failure to disclose the "total of the cash price" and the "finance charge" as is required by Regulation Z. (*See* doc. 96-1 at 8); *see also* 12 C.F.R. §§ 226.18(d),(j). Even considering these new allegations, any failure on the part of Defendant to provide him with the requisite disclosures should have been known to Plaintiff on April 9, 2004, the date his credit transaction was consummated. Any amendment of Plaintiff's claims under TILA and Regulation Z would be futile because they are time-barred and he cannot obtain equitable relief from the applicable limitations periods.

Plaintiff's proposed third amended complaint also explicitly asserts a claim under RESPA, but he fails to state additional facts to support it. (*See* doc. 96-1 at 3, 8.) His proposed amendment therefore does not save his RESPA claim because it is clear from his second amended complaint that his written requests were not QWRs, given that he sent them more than five years after his loan ceased to be serviced. Nor can he state valid claims for fraud, wrongful foreclosure, or violation of the Texas Constitution against Defendant because it was not involved in Plaintiff's credit transaction or in any of the foreclosure proceedings. Plaintiff's second amended complaint fails to state a claim for creation of a fraudulent lien, and his proposed third amended complaint does not allege any additional facts to support it. (*See id.*). Even considering his proposed third amended complaint, Plaintiff has failed to state a claim against Defendant that withstands the Rule 12(b)(6) challenge. It appears therefore that he has pled his best case, and no further opportunity to amend is warranted as to any of Plaintiff's claims against Defendant. They should therefore be dismissed with prejudice.

18

## V.  RECOMMENDATION

Defendant's motion to dismiss for failure to state a claim should be **GRANTED,** and Plaintiff's claims against it for violation of TILA and Regulation Z and for fraud, as well as any claim for violation of RESPA, wrongful foreclosure, violation of the Texas Constitution, and creation of a fraudulent lien should be dismissed with prejudice.   Defendant's alternative motion for summary judgment should be **DENIED as moot,** and Plaintiff's motions for summary judgment should be **DENIED**.[5]

SO RECOMMENDED on this 10th day of December, 2012.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5]  Because dismissal of Plaintiff's claims has been recommended under Rule 12(b)(6) for failure to state a claim, it is not necessary to consider Defendant's motion for summary judgment under Rule 56, and the motion should be denied as moot.  Plaintiff's cross motions for summary judgment should also be denied.