## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RICKEY FANTROY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:12-CV-0082-N (BH)** |
| | § | |
| FIRST FINANCIAL BANK, N.A., et al., | § | |
| | § | |
| **Defendant.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management. Before the Court for recommendation is *Fidelity National Title Insurance Company's Second Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, or in the Alternative, Rule 12(e) Motion for More Definite Statement* filed November, 11, 2012 (doc. 85). Based on the relevant filings and applicable law, Defendant's motion to dismiss should be **GRANTED,** and its alternative motion for a more definite statement should be **DENIED as moot.**

## I. BACKGROUND

This is an action involving foreclosure of real property located at 405 N. Trinity, Cleburne, Texas 76031(the Property). (*See* doc. 81 at 7–8.) Rickey Fantroy (Plaintiff) initially filed this *pro se* suit against First Financial Bank, N.A. (FFB) on January 10, 2012. (doc. 3.) On January 23, 2012, dismissal was recommended for lack of subject matter jurisdiction. (doc. 6.) After being granted leave, on March 5, 2012, he filed his first amended complaint against FFB; Ameriquest Mortgage Company (Ameriquest); Argent Mortgage Company (Argent); Deutsche Bank National Trust Company, as trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through

Certificates, Series Quest 2005-X1, Under the Pooling and Servicing Agreement Dated as of March 1, 2005 (Deutsche Bank); and Fidelity National Title Insurance Company (Defendant).  (docs. 19,20).  After some of the defendants moved to dismiss, Plaintiff moved for leave to file his second amended complaint on April 2, 2012.  (doc. 39.)  On April 24, 2012, Fidelity filed its first motion to dismiss Plaintiff's first amended complaint.  (doc. 58.)  Plaintiff then sought and was granted leave to file his second amended complaint  on October 26, 2012.  (doc. 80.)  The second amended complaint expressly asserted claims for violation of the Truth in Lending Act (TILA) and Regulation Z and for fraud.  (doc. 81 at 4–8.)

Plaintiff's verified second amended complaint alleges that on April 9, 2004, he obtained a home equity loan from Argent to refinance the Property, his homestead.  (*Id.* at 4.)  He claims that although he "only signed a refinance for $59,000," an additional $40,000 was disbursed, bringing the loan total to $109,894.20.  (*Id.* at 5.)  To secure the loan, he signed a "Texas Home Equity Security Instrument" for $108,000, granting Argent a first lien on the Property.  (*See* doc. 81-1 at 8.)  Plaintiff apparently defaulted, and on May 24, 2006, Deutsche Bank, as trustee, obtained an "order to proceed with notice of foreclosure and foreclosure sale." (*Id.*)  On November 7, 2006, the substitute trustee sold the Property to Deutsche Bank, as trustee, at a foreclosure sale for $99,000. (*Id.* at 8–9.)

At some point, Argent filed a forcible detainer action against Plaintiff in state court, and on October 15, 2008, the County Court at Law granted Argent's request for a "writ of possession." (*See* doc. 81-1 at 6.)  On May 13, 2009, Deutsche Bank sold the Property by "special warranty deed" to a private buyer who executed a promissory note in favor of FFB to cover part of the purchase price. (*Id.* at 15.)  On June 9, 2009, the County Constable served Argent's writ of possession, evicting

Plaintiff and all occupants from the Property.  (*Id.* at 6.)

Plaintiff alleges that "Defendant" violated TILA and Regulation Z because he "never received his closing documents" and "never had the chance of rescission."  (doc. 81 at 6.)  He contacted Fidelity numerous times after signing his loan to obtain copies of his closing documents, but as of the date he filed suit, he had yet to receive them.  (*See id.* at 5–6.)  Additionally, he contends that Deutsche Bank and FFB violated TILA by assigning a "fraudulent" note.  (*Id.* at 7.)  Consequently, he seeks loan rescission and statutory damages.  (*Id.* at 3, 8.)  He seeks equitable relief from the relevant limitations periods through equitable tolling and the discovery rule, asserting that he did not discover, and "could not have reasonably discovered," the purported TILA and Regulation Z violations until February 7, 2012, upon reading the statute.  (*Id.* at 7.)

According to the complaint, the security instrument Plaintiff executed "is marred by fraud" because he did not authorize the additional $40,000 disbursement.  (*Id.* at 5.)  A "true fax from Ameriquest ... [is] prima facie proof of the fraudulent act done on [his] homestead."  (*Id.*)  He also claims that the "fraudulent" security instrument resulted in a second, fraudulent lien being placed on the Property.  (*Id.* at 4.)  Even after the instrument was allegedly assigned to FFB, the fraudulent lien was never recorded in the Johnson County Clerk's office.   (*Id.* at 4–5.)

Plaintiff also contends that he and his family "were wrongfully foreclosed on and evicted from [his] homestead [on] January 9, 2009."  (*Id.* at 4–5.)  The foreclosure was wrongful because it was conducted pursuant to a security instrument that showed $108,000 as the loan amount, but he signed for only $59,000.  (*See id.* at 5.)  "Defendant" allegedly violated article XVI, § 50 of the Texas Constitution because the Property was foreclosed upon pursuant to a lien, but he never received purchase money, property taxes, "or work and materials" used to build improvements on

the Property in exchange for such lien. (*Id.* at 8.)

He claims that in February 2012, he sent a "Qualified Written Request [QWR] under [RESPA]" to Bruce Hildebrand, FFB's registered agent, and to "all agents." (*Id.* at 6.) In the purported QWRs, he requested copies of "the entire closing file for [his] loan," reasserted his contention that a "fraudulent second lien" was placed on the Property, and sought to "exercise [his] right to rescission pursuant to TILA and Regulation Z." (*See* doc. 81-1 at 46, 49–51.) In addition to Plaintiff's express claims for common law fraud and TILA and Regulation Zviolations, the complaint appears to assert claims for violations of the Real Estate Settlement Practices Act (RESPA), wrongful foreclosure, violations of Tex. Const. art. XVI, § 50(a), and the creation of a fraudulent lien under § 12.002(a) of the Tex. Civ. Prac. & Rem. Code. (*See* doc. 81 at 4–8.)

Fidelity (Defendant) moves to dismiss Plaintiff's second amended complaint for lack of subject matter jurisdiction and failure to state a claim, and in the alternative, for a more definite statement. (doc. 85 at 1.)[1] With a timely-filed response (doc. 92), the motion is now ripe for recommendation.[2]

## II.  RULE 12(b)(6) MOTION

Defendant first moves to dismiss the complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, arguing that Plaintiff fails to "state the basis" for jurisdiction in contravention of Rule 8(a)(1), and entirely fails to plead a "federal claim" against Defendant. (doc. 85 at 2–3.)

---

[1]  Because Plaintiff was granted leave to file, and did file, his second amended complaint (docs. 80, 81), and Fidelity subsequently moved to dismiss the second amended complaint (doc. 85), its first motion to dismiss (doc. 58) the first amended complaint was found moot and therefore not considered. (*See* doc. 86.)

[2]  After the defendants moved to dismiss the second amended complaint, on December 3, 2012, Plaintiff moved for leave to file his third amended complaint. (doc. 96.) On December 26, 2012, he moved for leave to file his fourth amended complaint, (doc. 108), so his motion for leave to file his third amended complaint was denied as moot on December 28, 2012 (doc. 109). The motion for leave to file a fourth amended complaint will be addressed by separate order.

Because Defendant's argument challenges the sufficiency of the pleadings and relies on Rule 8(a)(1),[3] the proper procedural vehicle for bringing this challenge is a Rule 12(b)(6) motion to dismiss for failure to state a claim, and not a Rule 12(b)(1) motion to dismiss for lack of jurisdiction.[4]  *See King v. Life Sch.*, 809 F. Supp. 2d 572, 578 (N.D. Tex. 2011) (explaining that a challenge to the sufficiency of the allegations in the complaint is properly brought under a Rule 12(b)(6) motion rather than a Rule 12(b)(1) motion).  Nonetheless, Defendant also moves to dismiss the complaint under Rule12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 85 at 3–4.)

## A.   Legal Standards

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal

---

[3]  To sufficiently state a claim for relief, Rule 8(a) requires the plaintiff, in relevant part, to include "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." Fed. R. Civ. P. 8(a)(1).  In his second amended complaint, Plaintiff asserts that "[t]he Court has jurisdiction over the lawsuit because the suit arises under the Truth in Lending Act."  (doc. 81 at 3.)

[4]  Even considering Defendant's argument regarding lack of subject-matter jurisdiction, Plaintiff expressly asserts claims under TILA and Regulation Z, and also appears to assert a claim under RESPA.  (*See* doc. 81 at 3, 6–7.) Because Plaintiff asserts claims under federal statutes, the Court has subject-matter jurisdiction over the case.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (holding that federal question jurisdiction exists when a federal question is *presented* on the face of the plaintiff's well-pleaded complaint) ; *Singh v. Duan Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (a federal question is presented when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law").  Notably, the Court has already found and exercised federal question jurisdiction in this case.  *See Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-0082-N BH, 2012 WL 6764551, at *1 (N.D. Tex. Dec. 10, 2012), *recommendation adopted*, 2013 WL 55669 (N.D. Tex. Jan. 4, 2013); (doc. 118, "Order Accepting Findings and Recommendation of the United States Magistrate Judge").

pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The alleged facts must "raise a right to relief above the speculative level." *Id.* In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software

*Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).   Rule 9(b) contains a heightened pleading

standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See*

Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir.

2010).   "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the

statements contended to be fraudulent, identify the speaker, state when and where the statements

were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d

175, 177 (5th Cir. 1997).   "Put simply, Rule 9(b) requires 'the who, what, when, where, and how'

to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343

F.3d 719, 724 (5th Cir. 2003).

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.   When a party presents "matters outside the pleadings" with

a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude

the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*,

847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise,*

*LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).   "If . . . matters outside the pleading[s] are presented

to and not excluded by the court," however, "the motion must be treated as one for summary

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all

the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley*

*Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).   Similarly, documents "attache[d] to a motion to

dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and

7

are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).  Lastly, it is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Accordingly, documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff has attached numerous documents to his complaint, including copies of what appear to be closing documents related to his home equity loan, the "writ of possession" Argent obtained in state court on October 15, 2008, the substitute trustee's deed, the special warranty deed Deutsche Bank issued the private buyer on May 13, 2009, Plaintiff's letters to multiple entities requesting his closing documents, and Plaintiff's purported QWRs.  (*See* docs. 81-1–81-3.)  These documents are considered part of the pleadings.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.  Because the attachments to Plaintiff's complaint are considered part of the pleadings, conversion of the motion to dismiss into a motion for summary judgment is unnecessary.

## B.    TILA and Regulation Z

Defendant moves to dismiss Plaintiff's claims under TILA (and by implication under Regulation Z), arguing that "[t]here is absolutely no fact alleged regarding [Defendant's] role in the actions complained of, either as a title company or title insurer, such that it could be held liable for actions in the business of lending or make it subject to liability under [TILA]."  (doc. 85 at 4.)  Liberally construed, the second amended complaint asserts that Defendant violated TILA and Regulation Z by failing to provide Plaintiff with notice of his "right of rescission", the necessary forms to enable him to exercise that right, and a copy of his loan closing documents.  (*See* doc. 81

at 3–4, 7.)  He expressly requests to rescind his loan pursuant to § 1635(a), and appears to request statutory damages under § 1640(a)(2)(A).  (*See id.* at 3, 8.)

TILA protects borrowers in lending transactions by requiring creditors to provide them with "a meaningful disclosure of credit terms."  15 U.S.C. § 1601; 12 C.F.R. § 226.1(b); *Fantroy*, 2012 WL 6764551, at *3 (citations omitted).  The Act defines "creditor" as "... a person who both (1) regularly extends, ... consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable."  15 U.S.C. § 1602(g).

Both TILA and Regulation Z, promulgated by the Federal Reserve Board to implement TILA, require creditors in mortgage lending transactions to give numerous disclosures to the borrower, including the amount financed, the finance charge, the total sale price, and information regarding debt cancellation.  *See* 15 U.S.C. §§ 1638(a), 1639(a); 12 C.F.R. §§ 226.1(a), 226.17–18. "Concluding a credit transaction without giving the required disclosures constitutes a TILA nondisclosure violation," which occurs when the transaction is "consummated."  *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) (citation omitted).  TILA grants borrowers a private cause of action to ensure proper disclosure by part of creditors and remedy nondisclosure violations. *See* 15 U.S.C. § 1640(a); *Fantroy*, 2012 WL 6764551, at *4.

Additionally, in mortgage lending transactions involving a lien on the borrower's principal dwelling, the creditor must provide the borrower with written "good faith estimates" of the requisite disclosures at least seven business days before the transaction is consummated.  15 U.S.C. § 1638(b)(2)(A).  The borrower also has the right to rescind such a "transaction until midnight of

the third business day following [its] consummation."[5]  *Id.* § 1635(a); 12 C.F.R. § 226.23(a).  The creditor must fully disclose this right to the borrower and provide him with the necessary forms to enable him to exercise it.  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b).  Notably, the borrower can still rescind the transaction within three years after its consummation if the creditor fails to comply with § 1635(a).  *See* 15 U.S.C. § 1635(f); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998).

Generally, only the original creditor and its subsequent assignees can be liable for damages based on nondisclosure and loan rescission based on a § 1635(a) violation.  *Garcia v. Universal Mortgage Corp.*, No. 3:12-CV-2460-L, 2013 WL 1858195, at *6 (N.D. Tex. May 3, 2013); *see also* 15 U.S.C. § 1640(a) (providing borrowers with a private cause of action against "any creditor who fails to comply with any requirement imposed under ... section 1635 ... [and] subsection (f) or (g) of section 1641"); 15 U.S.C. § 1641 ("Liability of assignees").  A loan servicer[6] may also be liable, but only if the servicer "is or was the owner of the obligation."  *Garcia*, 2013 WL 1858195, at *6 (citing 15 U.S.C. §§ 1602(g), 1641(f)(1) and *Consumer Solutions REO, LLC v. Hillery*, No. C–08–4357 EMC, 2010 WL 144988, at *3 (N.D. Cal. Jan. 8, 2010)).

Here, Plaintiff alleges that he obtained his home equity loan from Argent.  (doc. 81 at 4.) He asserts that Defendant "did all the paperwork" related to the loan closing.  (*Id.*)  A closing document attached to the complaint, titled "Department of Housing and Urban Development [HUD] Settlement Statement," identifies Argent as the "lender."  (*See* doc. 81-1 at 3.)  Another document,

---

[5]  Rescission is "a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually the loan proceeds)." *Rojo v. Bear Stearns Residential Mortgage Corp.*, No. 09-CV-230, 2011 WL 2601355, at *3 (E.D. Wis. June 30, 2011) (citing *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008)); (parenthesis in *Andrews*).

[6]  TILA defines "servicer" by reference to RESPA's definition.  *See* 15 U.S.C. § 1641(f)(3).  RESPA defines it as "the person responsible for servicing of a loan," including the lender if it "also services the loan."  12 U.S.C. § 2605(i)(2).

titled "Final Check Register", shows that Ameriquest deposited $109,326.78 into an escrow account on the date the credit transaction was consummated.  (*See id.* at 4. )  The substitute trustee's deed shows that on that date, Plaintiff granted Argent a "security interest" in the Property "for the purpose of securing and enforcing payment of a [home equity loan] ... in the original principal sum of $108,000."  (*Id.* at 8.)

In light of these attachments, the allegations in Plaintiff's complaint fail to show that Defendant extended him the credit for the loan or was "the person to whom the debt arising from [his] consumer credit transaction [was] initially payable."  *See* 15 U.S.C. § 1602(g).  Accordingly, even assuming for purposes of this motion that Plaintiff did not receive the requisite disclosures, copies of his loan closing documents, or the necessary forms to exercise his right of rescission, the allegations fail to raise a reasonable inference that Defendant is liable for these violations as a "creditor" pursuant to 15 U.S.C. § 1640(a).  Moreover, because Plaintiff does not allege or state any facts showing that Defendant was ever assigned or ever serviced his loan, he fails to show that Defendant could be liable under 15 U.S.C. § 1641.  Plaintiff therefore fails to state plausible claims for relief under TILA and Regulation Z against Defendant.

Moreover, even if Plaintiff could otherwise factually state a nondisclosure and right of rescission claim against Defendant, he could not recover because the claims are time-barred.[7]  His rescission claim is completely barred by § 1635(f)'s three-year statute of limitations, which courts have held "mirrors a typical statute of repose in that it absolutely bars rescission claims filed more than three years after the loan transaction is consummated."  *Fantroy*, 2012 WL 6764551, at *3

---

[7]  Although the statute of limitations is an affirmative defense, the defense may be considered for purposes of a Rule 12(b)(6) motion if the facts giving rise to it "appear[] on the face of the complaint."  *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

(citing *Renfrow v. CTX Mortg. Co., LLC*, No. 3:11-CV-3132-L, 2012 WL 3582752, at \*5 (N.D. Tex. Aug. 20, 2012)); *see also* 15 U.S.C. 1635(f); *Beach*, 523 U.S. at 419.   With respect to his nondisclosure claim, the applicable one-year statute of limitations expired on April 9, 2005, and he cannot obtain equitable relief from the limitations period because he concedes to have known about the alleged nondisclosure since his loan closing on April 9, 2004.  *See Fantroy*, 2012 WL 6764551, at \*4–6; *see also* 15 U.S.C. § 1640(e) (providing a one-year statute of limitations for damages claims based on nondisclosure); (doc. 81 at 5).

In conclusion, because Plaintiff fails to allege sufficient facts to state plausible nondisclosure and right of rescission claims under TILA and Regulation Z against Defendant, and because his claims are otherwise completely time-barred, the claims should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## C.      Common-Law Fraud

Defendant contends that "Plaintiff has pled no facts in support of any claims" against it and "appears simply to have lumped [it] in with the other defendants."  (doc. 85 at 4.)

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.  *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010)).  As noted, a fraud claim is subject to the heightened pleading requirement of Rule 9(b).  *See Potter*, 607 F.3d at 1032.

Here, Plaintiff alleges that the security instrument he executed on April 9, 2004, "is marred by fraud" and "requires the court to set aside the [lending] contract" because he "only signed a refinance for $59,000" but an additional $40,000 was disbursed. (*See* doc. 81 at 4–5, 7–8.)   As a result of the unauthorized disbursement, a fraudulent lien was created on the Property. (*Id.* at 4–5.) "[A] true fax from [Ameriquest]" is "prima facie proof of the fraudulent act done on [his] homestead."   (*Id.* at 5.) He avers that Defendant "did all the paperwork" related to his loan transaction. (*Id.*) Lastly, he contends that the "fraudulent" note he signed on April 9, 2004, "is now assigned" to FFB.  (*Id.* at 7.)

Notwithstanding his allegations, Plaintiff fails to meet the heightened pleading requirements of Rule 9(b).  Although he identifies the "what" and "when", he fails to lay out the "who, where, and how" with particularity.  *See Benchmark Electronics*, 343 F.3d at 724.  While he claims that he "only signed" for $59,000.00 but an additional $40,000.00 was disbursed, the "final check register" attached to his complaint shows that Ameriquest, not Defendant, disbursed and deposited $109, 326.78 into his escrow account.  (*See* doc. 81- at 4.)  Moreover, even assuming that Defendant processed Ameriquest's disbursement, Plaintiff's allegations still fail to raise a reasonable inference that Defendant knew that the $40,000.00 disbursement was unauthorized.  He also fails to allege any facts supporting an inference that Defendant made the purported misrepresentation to him and *intended* him to act on it.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b) … The plaintiffs must set forth *specific facts* supporting an inference of fraud[,] ... such as identify[ing] circumstances that indicate conscious behavior on the part of the defendant.") (citations omitted) (emphasis in *Dorsey*).  Accordingly, Plaintiff's fraud claim against Defendant should be dismissed

13

under Rule 9(b) for failure to meet the rule's heightened pleading requirements.

## III.  REMAINING CLAIMS

As noted, Defendant contends that "Plaintiff has pled no facts in support of any claims" against it.  (doc. 85 at 4.)  Although not expressly listed as claims, the allegations in Plaintiff's complaint may be liberally construed as also asserting claims for RESPA violations, wrongful foreclosure, violation of article XVI, § 50 of the Texas Constitution, and creation of a fraudulent lien under § 12.002(a) of the Tex. Civ. Prac. & Rem. Code.

### A.      RESPA

Plaintiff's complaint appears to assert a claim under RESPA by stating that he sent a "QWR" to FFB's agent and to "all agents".  (*See* doc. 81 at 6.)

RESPA protects borrowers by requiring lenders of federally-related mortgage loans to fully and clearly disclose all settlement costs and prohibiting predatory practices in the lending and servicing of mortgage loans.  *See* 12 U.S.C.A. §§ 2601(a), 2605–2608 (West 2011);  *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *3 (N.D. Tex. May 19, 2011).  Pursuant to RESPA, if a loan servicer receives a qualified written request (QWR) from the borrower for information about the loan, the servicer must acknowledge the receipt of the QWR within 20 days unless it takes other action requested by the borrower within that time-frame. 12 U.S.C.A. §§ 2605(e)(1)–(2); 24 C.F.R. § 3500.21(e) (2012).  A QWR is:

> A written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, . . . that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] . . . includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B).  The QWR must relate to the "servicing" of the loan, which is defined

as "receiving any scheduled periodic payments from a borrower" and "making the payments of principal and interest ... received from the borrower as may be required pursuant to the terms of the loan." *Id.* §§ 2605(i)(3), 2605(e)(1)(A).  However, a "written request does not constitute a [QWR] if it is delivered to the servicer more than 1 year after either the date of transfer of servicing or the date that the mortgage servicing loan amount was paid in full, whichever date is applicable."  24 C.F.R. § 3500.21(e)(2)(ii).

Here, Plaintiff asserts that he sent a QWR to FFB's agent and to "all agents" in February 2012, "allowing the TILA time to start."  (doc. 81 at 6.)  First, the purported QWRs related more to his claims for fraud and violations of TILA and Regulation Z than to any inquiry about the servicing of his loan given his request for copies of his closing documents, his contention that a fraudulent lien was placed on the Property, and attempt to rescind his loan "pursuant to TILA and Regulation Z."  (*See* doc. 81-1 at 46, 49–52.)  Ultimately, because he sent the written requests more than five years after his loan was terminated by the foreclosure and ceased being serviced,[8] the requests were not QWRs.  *See* 24 C.F.R. § 3500.21(e)(2)(ii); *see also Cavil v. Trendmaker Homes, Inc.*, No. CIV.A. G-10-304, 2012 WL 170751, at *3 (S.D. Tex. Jan. 19, 2012) (holding that the plaintiff's correspondence was not a QWR because "it was not sent until months after the ... foreclosure sale ... a point in time in which [the defendants] were no longer a 'servicer' of the loan").

To the extent that Plaintiff's complaint asserts a claim under RESPA, he fails to state a claim

---

[8] Under the Texas Constitution, home equity loans "must ... be made pursuant to a nonrecourse note."  *Smith v. JP Morgan Chase Bank, Nat. Ass'n*, 825 F. Supp. 2d 859, 863 (S.D. Tex. 2011) (citing Tex. Const. art. XVI, § 50(a)(6)(C)).  "[U]pon default," a nonrecourse note "is payable only out of the specific collateral, with no possibility of a deficiency judgment against the debtor, personally."  *Id.* (citing *Pineridge Associates, L.P. v. Ridgepine, LLC*, 337 S.W.3d 461, 465 (Tex. App.—Fort Worth 2011, no pet.)).  Foreclosure on the collateral therefore terminates the loan since the borrower "has no personal liability beyond the loss of the collateral securing the note."  *Pineridge Associates, L.P.*, 337 S.W.3d at 465 (citation omitted).  Here, because Plaintiff's home equity loan was a nonrecourse loan, the loan was extinguished when the substitute trustee sold the Property to Deutsche Bank at the foreclosure sale on November 7, 2006.

against Defendant as a matter of law, and the claim should be dismissed.[9]

**B.      Wrongful Foreclosure**

Plaintiff's claim that he and his family "were wrongfully foreclosed on" appears to assert a "wrongful" foreclosure claim.  (*See* doc. 81 at 4–5, 7–8.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).  A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings."  *Matthews*, 2011 WL 3347920, at *2.  Nevertheless, recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect."  *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

---

[9]  Plaintiff fails to state a RESPA claim against Defendant for the additional reason that his allegations do not show that Defendant ever serviced his loan.  He contends that Defendant "did all the paperwork" for his loan closing, but fails to allege or assert any facts showing that Defendant received monthly payments from him and made "the payments of principal and interest" as required by the terms of the loan.  *See* 12 U.S.C. § 2605(i)(3).

Apart from his bare allegation that the Property was "wrongfully foreclosed upon," Plaintiff fails to state any facts supporting a wrongful foreclosure action.  He does not allege that the Property was sold for a grossly inadequate selling price; nor do his allegations show a causal connection between a defect in the foreclosure process and any such grossly inadequate selling price.  *See Hurd*, 880 F. Supp. at 747.  Most significantly, he entirely fails to state a viable claim for relief against Defendant because the pleadings do not show that Defendant was involved in the foreclosure proceedings.  The substitute trustee's deed reveals that Deutsche Bank, as trustee, obtained a court "order to proceed with notice of foreclosure and foreclosure sale," and that the substitute trustee conducted the foreclosure sale.  (*See* doc. 81-1 at 8–9.)  Because Plaintiff fails to state a claim for wrongful foreclosure against Defendant, it should be dismissed under Rule 12(b)(6).

## C.    Texas Constitutional Claim

Plaintiff's complaint also invokes article XVI, subsections 50(a)(1), (2), (5), and (6) of the Texas Constitution.  (*See* doc. 81 at 8.)  He essentially argues that Defendant violated these provisions by creating a lien on the Property and foreclosing on it but failing to provide him with purchase money, property taxes, or money or materials to build improvements.  (*See id.*)

Article XVI, § 50 of the Texas Constitution provides in relevant part:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
(1) the purchase money thereof, or a part of such purchase money;
(2) the taxes due thereon ...

(5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon ...

(6) an extension of credit that:
(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse ....

Tex. Const. art. XVI, § 50(a)(1)-(2), (5)-(6).  Plaintiff fails to state a claim against Defendant because he does not allege that Defendant was the lender of his loan or that it was involved in the foreclosure proceedings.  The HUD settlement statement identifies Argent as the lender, the final check register reveals that Ameriquest disbursed the loan funds, and the substitute trustee's deed shows that Deutsche Bank obtained a court order to foreclose on the Property and the substitute trustee conducted the foreclosure sale.  (*See* doc.81-1 at 3–4; 8–9.)  Accordingly, this claim should also be dismissed for failure to state a claim.

**D.      Fraudulent Lien**

Finally, Plaintiff's allegation that the unauthorized disbursement of $40,000.00 created a fraudulent lien on the Property could be liberally construed as asserting a "fraudulent lien" claim under § 12.002(a) of the Tex. Civ. Prac. & Rem. Code.  (*See* doc. 81 at 4–5.)

The Code establishes the requirements for this cause of action, providing in relevant part:

A person may not make, present, or use a document or other record with:
(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
(3) intent to cause another person to suffer:
(A) physical injury;
(B) financial injury; or
(C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code § 12.002(a); *see also Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 369–70 (5th Cir. 2012).

Plaintiff avers that the security instrument he executed was "marred by fraud" because he

18

did not authorize the $40,000.00 disbursement.  (doc. 81 at 4–5, 7–8.)  Pursuant to that instrument, a "fraudulent lien" was placed on the Property.  (*Id.* at 4–5.)  By alleging that Defendant prepared "all the paperwork," he essentially claims that Defendant prepared the fraudulent security instrument.  (*See id.* at 4.)  Notably, even if these allegations are accepted as true for purposes of this motion, Plaintiff still fails to allege any facts showing that Defendant knew of the unauthorized disbursement, intended that a fraudulent lien be filed against the Property and be given the same effect as a valid lien, or that Defendant intended to injure Plaintiff or cause him mental anguish or emotional distress.  Accordingly, this claim should also be dismissed for failure to state a claim.

## IV.  RECOMMENDATION

Defendant's motion to dismiss for failure to state a claim should be **GRANTED,** and its alternative motion for a more definite statement should be **DENIED as moot.**  Plaintiff's claims against Defendant for violation of TILA and Regulation Z, fraud, RESPA violations, wrongful foreclosure, violation of the Texas Constitution, and creation of a fraudulent lien should be dismissed with prejudice for failure to state a claim.[10]

**SO RECOMMENDED on this 5th day of July, 2013.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10]  As noted, Plaintiff has filed a motion for leave to file a fourth amended complaint that will be addressed by separate order.  (*See* doc. 108.)  Even if considered, the proposed amended complaint does not save any of his claims from dismissal.  It therefore appears that Plaintiff has pled his best case, and no further opportunity to amend is warranted.  Plaintiff's claims against Defendant should be dismissed with prejudice.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE